## PEOPLE *v.* TURTON.

1. CRIMINAL LAW—CROSS-EXAMINATION—EVIDENCE—SEDUCTION.

   Chastity of the complaining witness in a seduction case must be shown to have existed at the time of the alleged offense. And a full cross-examination and searching inquiry into any matters which might directly, or indirectly, throw any light upon these questions and to tend to test the integrity of evidence offered by the prosecutrix, as to her reasons for yielding, frame of mind and mental processes, was a substantial right of the accused.[1]

2. SAME—WITNESSES.

   Where the prosecutrix is a young, inexperienced girl, the courts very rightly hold that promises and means are sufficient which would not move one of mature years.

3. SAME—PREGNANCY—EVIDENCE.

   The reception of testimony that the prosecutrix was pregnant in March was incompetent in the light of other proofs of a medical expert that she was then not more than a month advanced and that it would be impossible that she could have been in such condition as a result of

[1]For authorities passing on the question of evidence of specific instances to prove character for chastity of complaining witness in prosecution for seduction, see note in 14 L. R. A. (N. S.) 727.

intercourse at the time laid in the information, and its admission in connection with a charge submitting to the jury the question as an issue of fact, constituted prejudicial error.

Exceptions before sentence from the recorder's court of the city of Detroit; Connolly, J. Submitted June 15, 1916. (Docket No. 128.) Decided July 21, 1916.

John Turton was convicted of seduction. Reversed.

*Grant Fellows*, Attorney General, *Charles H. Jasnowski*, Prosecuting Attorney, and *Paul W. Voorhies*, Assistant Prosecuting Attorney, for the people.

*Charles T. Wilkins*, for respondent.

STEERE, J. Respondent was convicted in the Detroit city recorder's court, on September '16, 1915, of having, on December 17, 1914, seduced one Gladys Rickert, an unmarried woman, and the case has been removed to this court for review on exceptions before judgment.

Of the formidable number of assignments of error presented, we find but two which are regarded as calling for serious consideration. They involve alleged undue restriction upon cross-examination of the complaining witness and admission of testimony touching her claimed pregnancy. The prosecutrix, who was sole witness to establish the essential elements of the offense charged, testified, in part, that she was a divorced woman 21 years of age, was married December 21, 1913, and during her married life was twice separated from her husband, who left her each time; that she filed a bill for divorce from him September 3, 1914, obtained a decree December 5, 1914, became engaged on December 13, 1914, to defendant, with whom she had kept steady company since October, and was seduced by him December 17, 1914, just twelve days after she had reverted to the status of an "un-

married woman" and her seduction made legally possible under the statute. Of the circumstances under which her acquaintance with defendant was formed, she testified that she first met him in a cigar store on the evening of October 8, 1914, as she and a girl friend were returning from attending a show; that just as they were passing by the cigar store at the corner of Woodward and Jefferson avenues, in Detroit, a clerk in that store whose name she did not then know, and to whom she had never spoken, although she had before waved to him when passing by, motioned to them to come in, and on their complying he introduced himself and defendant to them by assumed names, as she later learned, after which the men asked them to wait, and they would take them home; that later, on defendant's suggestion, they all went to the "café part of the Victoria Hotel," which she described as "some out of the way place, back of the Victoria Hotel," where there were stalls, in one of which drinks were served to them; that the cigar clerk, whose true name she learned was Chronister, was with the other girl, and she went with defendant, whose true name, as he told her that night, was Turton; that while there she drank a glass of beer and two lemonades, during which time she told defendant she was a married woman, and "would not go any place with him until after I had got my divorce," although she stated in her direct examination "we had been keeping steady company since October." The foregoing statements are culled from her testimony only for their bearing upon defendant's right to a sifting cross-examination, and not as fairly representative of the whole nor as indication of an opinion on the merits of the prosecution. Her account of the event which gave rise to this prosecution is as follows:

"We were home alone that evening, we were sitting on the davenport, planning about getting married, and

Mr. Turton asked me to have intercourse with him. I did not want to, and he says, 'Well,' he says, 'you might as well; we are going to be married soon; no one will ever know the difference.' There wasn't nobody else at home then beside myself and the defendant. I allowed him to have intercourse with me.

"Q. Why?

"A. On the promise of marriage. * * * That was the only reason that actuated me in allowing him to have intercourse with me. That was on December 17, 1914."

This court has several times held that the offense charged here is not committed unless the woman was chaste at the time of the alleged seduction. *Greenman* v. *O'Riley*, 144 Mich. 534 (108 N. W. 421, 115 Am. St. Rep. 466). To constitute the offense defendant must not only be shown to have had carnal intercourse with the prosecutrix, but her assent must have been obtained by an inducement or promise made at the time which overcame her natural sentiments of modesty, purity, and virtue, and without which promise she would not have consented; the promise and surrendering her chastity in consequence thereof being the gist of the offense. *People* v. *De Fore*, 64 Mich. 693, 699 (31 N. W. 585, 8 Am. St. Rep. 683). Both prosecutrix's veracity and virtue were vital questions in the case. A full cross-examination and searching inquiry into any matters which might directly or indirectly throw any light upon those questions and tend to test the integrity of her testimonial assertions as to her reasons for yielding, frame of mind, and mental processes in that connection was a substantial right. To that end and as bearing upon her previous manner of life, knowledge, and worldly experience in the relation of the sexes, defendant's counsel sought in cross-examination, but was not permitted, to interrogate her as to her relations with her former husband, the facts relating to her obtaining a divorce from him and the

allegations in her sworn bill of complaint for divorce. As bearing upon such an inquiry in a case where the age and experience of complainant are as indicated here, the following reflections in *People* v. *Smith,* 132 Mich. 58 (92 N. W. 776), appear pertinent:

"Where the woman is a young, inexperienced girl, the courts very properly hold that promises and means are sufficient which would not move a woman of mature years. * * * The complaining witness in this case, however, was not a young and inexperienced girl. She was nearly 20 years of age, and, it is apparent, knew quite well the consequences of her act."

In this peculiar class of cases, which, as a rule, necessarily turn on the testimony of the woman claimed to have been seduced, the right to test the probability of her story, her character, and willingness to fairly tell the truth, by a searching cross-examination is universally recognized. The proposed inquiry should have been allowed. Its denial unduly, and we think prejudicially, restricted defendant's substantial and important right, through his counsel, to a full cross-examination of the accusing witness.

The complaining witness was asked in her direct examination if she was then pregnant, and permitted to answer that she was. The question was timely objected to as incompetent and having no bearing on the case "unless it is the result of the intercourse alleged in this information." In overruling this objection the court said:

"She has testified that there was not any other man who had intercourse with her from December 14, 1914."

In this the court was laboring under a misapprehension, arising, perhaps, from her statement that prior to the time of her alleged seduction on December 17, 1914, she did not have intercourse with any other man except her husband. The record discloses no testimony

by her as to whether she did or did not have intercourse with any man after December 17, 1914, beyond the inference from her statement that she was seven months advanced in pregnancy. A physician who had examined her some time in March, 1915, was permitted to testify, over objection, that she was then pregnant, about a month advanced according to his diagnosis; that it had resulted from an intercourse during the preceding month, and would not be the result of an intercourse in December, 1914. Both his and her testimony touching the subject make clear that her alleged pregnancy did not result from the intercourse of December 17, 1914, alleged in the information. This testimony as to pregnancy was wholly incompetent to prove a seduction during an intercourse which took place long before that by which she became pregnant, and was clearly inadmissible. *People* v. *Payne*, 131 Mich. 476 (91 N. W. 739). It, however, wrought into the evidence and impressed upon the jury the features of a prospective bastardy case, inferentially against defendant, upon a trial for seduction which, almost inevitably, prejudicially led to a confusion of issues. Although the offense charged was properly defined to the jury by the court, and they were told the complaining witness' pregnancy was not the issue, yet in denying, after reading to the jury, defendant's request to charge that there was no proof the complaining witness was pregnant by reason of the intercourse charged in the information, the court clouded the issue by saying:

"I leave that as a question of fact for you to determine, gentlemen of the jury."

For the foregoing reasons, we conclude the verdict must be set aside, and a new trial granted.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.