# OCTOBER TERM, 1921.

## SAVAGE v. EMBREY.

1. SEDUCTION—EVIDENCE—SUFFICIENCY.

    In an action for the seduction of plaintiff, a girl of 21 years of age, evidence tending to show that she was backward mentally, that she had little knowledge of the ways of the world, and that defendant, an experienced man of the world, induced her to submit to his sexual embraces by means of false protestations of love and affection, *held*, sufficient to warrant the trial judge in submitting the case to the jury, although there was no promise of marriage. MOORE and BIRD, JJ., dissenting.

2. SAME—INTERCOURSE ALONE INSUFFICIENT.

    Seduction is not committed where illicit intercourse is induced simply to gratify a lustful passion on the part of both.

3. JUDGMENT—NON OBSTANTE VEREDICTO.

    Where there was sufficient evidence to present a case for the jury, the trial judge properly refused to enter a verdict for defendant *non obstante veredicto*.

4. SEDUCTION—DEFINITION.

    Seduction may be defined to be the act of persuading or inducing a woman of previous chaste character to depart from the path of virtue by the use of any species of arts, persuasions, or wiles which are calculated to have, and do have, that effect, and resulting in her ultimately submitting her person to the sexual embraces of the person accused.

5. SAME—DECLARATION—SUFFICIENCY—VARIANCE.

    The declaration, which informed defendant of the case he would be expected to meet, was sufficient, although in some regards it used general language where specific allegations would have been more appropriate; there being no question of variance.

Error to Kent; Perkins (Willis B.), J. Submitted April 12, 1921. (Docket No. 76.) Decided October 7, 1921.

Case by Ila L. Savage against Harvey L. Embrey for seduction. Judgment for plaintiff. Defendant brings error. Affirmed.

*H. Monroe Dunham* (*Cummins & Nichols*, of counsel), for appellant.

*Dilley, Souter & Dilley*, for appellee.

FELLOWS, J. Plaintiff recovered a judgment of $2,000 in the Kent circuit court for seduction. Defendant upon this writ of error seeks its reversal upon two grounds only: That plaintiff did not make a case of seduction by her testimony, and that her declaration was insufficient. Upon the argument of the case I was impressed that defendant's first contention was correct. But a careful examination of this record, a comparison of it with records in other cases in this court in which it has been held that liability was established, an examination of the decisions of this court where the question has been involved, has persuaded me that plaintiff has made a case for the jury when we keep in mind the rule that, upon a motion to direct a verdict for defendant, the testimony and legitimate inferences that may be drawn from it most favorable to plaintiff must be accepted.

Plaintiff was 21 years of age at the time of the alleged seduction. She had been brought up at Shelby in Oceana county where she attended school. It is claimed she was backward. She did not graduate from school until after she was 20 years old. She worked in a telephone office there for a while, when she came to Grand Rapids and obtained employment as telephone operator at the Pantlind hotel. Here she

met defendant, a traveling man 40 years of age.   She had never kept company with boys and, except on one occasion when a man took her to dinner and to a show, the defendant was the first to pay her attention. Defendant had occasion to use the telephone and thus became acquainted with plaintiff.   He invited her to go out to dinner with him, which invitation she accepted; after dinner they went to a show and then defendant took her to her rooming place; there he embraced and kissed her and told her how much he thought of her. This was in the latter part of February.   Defendant's business kept him in Grand Rapids for about a week, and on three or four evenings during the week he took her to dinner and to shows.   On (probably) the third of the occasions when defendant entertained plaintiff he solicited intercourse which she refused.   Defendant's business took him to Ludington for a few days. Upon his return to Grand Rapids he renewed his attentions to plaintiff.   She testified to several occasions when he took her to dinner and to shows, both before and after his trip to Ludington:   It is her claim that on each of these occasions he told her he loved her and embraced and kissed her when they arrived at her home.   On some occasions he solicited intercourse which was refused.   Once he asked her to go with him to another hotel in the city and stay all night, suggesting that they register as man and wife.   Defendant's business in and about Grand Rapids being completed, he left for his trips on the road but took up and continued a correspondence with her for some time.   The earlier of the letters were destroyed by defendant but later ones were produced and offered in evidence.   They may not fall within the category of love letters but in them he generally addressed her as "Dear Ila," and concludes "with love."

In the fore part of April defendant called plaintiff on long distance telephone from Detroit; told her he

would be in Grand Rapids that evening on the 9:50 train; asked her to meet him and stay down town with him that night. She refused the suggestion to stay down town but did meet him at the train. They first went to a nearby hotel; defendant there told her he had registered as man and wife and asked her to go up to the room with him; this she refused to do and he went up alone. When he came down they went out and got some ice cream, he continuing his solicitations that she go to his room with him. She testifies that he said to her that he should think that after he had thought so much of her as to come clear from Detroit to see her that she ought to do a little something for him. She finally yielded and went to his room where they had intercourse. The next afternoon they went to her room where they again had intercourse. Plaintiff became pregnant and a child was born. Defendant in bastardy proceedings pleaded guilty and made a financial settlement with the county authorities for the support of the child.

There was no promise of marriage but plaintiff claims that defendant's repeated protestations of love were false and were made to secure her downfall, but that she at the time believed and relied upon them to her ruin; that she had become very fond of him and had confidence in him. She testifies:

"He embraced me and he told me he thought a great deal of me and that is as far as he went. I believed him. I had no reason to believe otherwise. At the time of my first intercourse with Mr. Embrey I had come to think a great deal of him. He expressed his love to me at various times. I believed him. I didn't see him after this occasion in my room. That was the last. I became pregnant but did not realize it until in August in the hospital."

. It is the theory and claim of plaintiff's counsel that plaintiff was a simple-minded country girl, in no way

world-wise; that defendant, an experienced man of the world, by his false protestations of love, his arts and wiles continued over a period of two months, both when with her and by correspondence, had obtained her confidence and love, and that she at the end of that time yielded her person to him by reason of the arts, persuasion and wiles practiced by defendant which were calculated to have, and did have, the effect upon her of causing her to submit to his sexual embraces; and that sufficient appears in the testimony to entitle her to take the verdict of a jury. Defendant, on the other hand, while offering no testimony himself but basing his claim on the testimony of the plaintiff, insists that the intercourse was the result of mutual desire, and at most brought about by persuasion only which it is claimed is not the equivalent of the arts and wiles necessary to bring the case within the definition of seduction.

Illicit intercourse alone does not constitute the crime of seduction. Where it is induced simply to gratify a lustful passion on the part of both the offense is not committed.

" 'Seduction may be defined to be the act of persuading or inducing a woman of previous chaste character to depart from the path of virtue by the use of any species of arts, persuasions, or wiles which are calculated to have, and do have, that effect, and resulting in her ultimately submitting her person to the sexual embraces of the person accused.' " *People* v. *Gibbs,* 70 Mich. 425.

In this case it was said by Chief Justice SHERWOOD, speaking for the court:

"The 'seducing and debauching of the unmarried female' was the crime for which the respondent was being tried. It consisted of the means used by him to induce this young girl to yield and surrender to him her chastity and her virtue; and such means always include all the acts, artifices, influences, prom-

ises, enticements, and inducements, calculated, under all the circumstances of the case being considered, to accomplish that object; and all testimony having any tendency to establish any of these should be admitted when offered to prove the criminal conduct. We find nothing in the testimony received going beyond this.

"In all such cases, the age, experience, artfulness, and blandishments of the offender, and the youthfulness, innocent, guileless and confiding nature of the injured party, will always be found to enter largely into the consideration of the acts of the parties involved in the investigation; and the largest latitude consistent with safety should be allowed in taking the testimony having any tendency to develop the material facts in the case. A proper regard for the protection of female virtue, and the welfare of society, can never require less. * * *

"A false promise of marriage, under our statute, is not a necessary element in the influence exerted through the wiles, artifice, and deception used by the seducer in taking advantage of the guileless simplicity and confidence of a young girl, and leading her from the path of virtue, in depriving her of her chastity, and accomplishing her ruin; but any other subtle device or deceptive means, involving the same moral turpitude, used by him in accomplishing the same criminal result, is all that is necessary to constitute the crime. The quality of the means used, rather than the kind, is that which characterizes the act, and brings it under the condemnation of the law."

In *Stoudt* v. *Shepherd*, 73 Mich. 588, this court, speaking through Justice CAMPBELL, said:

"This court recognized, what we conceive to be the recognized doctrine of experience, that seduction may be accomplished by means of influence and persuasion intended to reach, and actually reaching, the result, which do not necessarily involve either a promise of marriage or pecuniary advantage; and that such effectual persuasion which is the active cause of it may be as distinct a grievance as the more venal representations, which appeal to covetousness more than to excited feeling."

In *Watson* v. *Watson*, 53 Mich. 168 (a case which was before this court on three other occasions, see 47 Mich. 427; 49 Mich. 540; and 58 Mich. 507), it was said by Chief Justice COOLEY:

"It was urged by the defendant that on the evidence of the plaintiff the action could not be maintained, because as she claimed, the intercourse was accomplished by force, and was therefore not seduction, but rape. But the plaintiff's evidence did not make out rape: it made out only that her will was overcome by the defendant's superior will, which had controlling influence because of the parental relation which he had assumed towards her."

We shall not quote farther from the cases. The following together with the records in several of them have been examined. *People* v. *Millspaugh*, 11 Mich. 278; *People* v. *Brewer*, 27 Mich. 134; *People* v. *Clark*, 33 Mich. 112; *Lewis* v. *People*, 37 Mich. 518; *People* v. *DeFore*, 64 Mich. 693 (8 Am. St. Rep. 863) ; *People* v. *Gould*, 70 Mich. 240; *Hallock* v. *Kinney*, 91 Mich. 57; *Becker* v. *Mason*, 93 Mich. 336; *People* v. *Bressler*, 131 Mich. 390; *People* v. *Smith*, 132 Mich. 58; *Greenman* v. *O'Riley*, 144 Mich. 534 (115 Am. St. Rep. 466) ; *Velthouse* v. *Alderink*, 153 Mich. 217 (18 L. R. A. [N. S.] 587) ; *People* v. *Adams*, 162 Mich. 371; *People* v. *Turton*, 192 Mich. 331. None of them are out of accord with the excerpts quoted.

While counsel on both sides have cited cases from other jurisdictions which have been examined we do not deem it necessary to discuss them. This court has been called upon to consider such cases altogether too frequently and the law is pretty well settled in this State. Our own cases must control. Their examination and particularly those in which the records are available is convincing that plaintiff by her testimony has made a case for the jury under the former holdings of this court. It is true that she was 21 years

216—Mich.—9.

old and that girls of that age in overwhelming number would not have succumbed to defendant's blandishments.    But there is color to the claim that she was backward and indisputably she knew little of men; her mother was dead, and she doubtless had never been warned of the pitfalls constantly ahead of young womanhood.    Defendant was a man of experience, a man of the world; his oft repeated protestations of love were false, his attention and pretended evidence of affection for her were for a base purpose and constituted those arts, wiles and persuasions noted in the cases.    The facts in this case differ in shade from other cases, differ in degree from other cases, but they were for the jury and we cannot say they were insufficient as matter of law.    Courts of last resort do not blaze the trail that may be safely followed by men such as defendant in their pursuit of sexual pleasure.    That which would accomplish the ruin of one girl of 21 would fall far short of accomplishing its purpose with hundreds of others of the same age. The jury saw the plaintiff, heard the story of her shame and the means used by defendant to accomplish her downfall.    They were able to judge of her experience, whether she was sophisticated or otherwise, and it was for them to consider her experience, whether she was as world-wise as her age would indicate she naturally would be, whether she was backward as claimed, whether she yielded her virtue only because of defendant's false protestations of love, his arts and wiles and persuasions, or because of inherent desire.    The trial judge was not in error in refusing to direct a verdict, or in refusing to enter judgment for defendant *non obstante veredicto*.

We think the plaintiff's declaration was sufficient as against the objections urged.    While in some regards it used general language where specific allegations would have been more appropriate, it was sufficient

to inform defendant of the case he would be expected to meet. In some regards the proofs did not measure up to the allegations of the declaration but no question of variance is before us.

The judgment will be affirmed.

STEERE, C. J., and WIEST, STONE, CLARK, and SHARPE, JJ., concurred with FELLOWS, J.

BIRD, J. (*dissenting*). At the conclusion of plaintiff's testimony in this case defendant requested a directed verdict on the ground that a case of seduction had not been made. I think this motion should have been granted. It is true that it is not always easy to determine just what conduct will constitute seduction, but if we are going to say that defendant is guilty of seduction, we should be able to point out the acts which make him so. If the acts as shown in this case constitute seduction, then all cases of fornication outside of commercialized vice are seduction. Courts have gone a great ways and have strained the rule in order to protect young girls, but there is no young girl involved in this case. Plaintiff was a grown woman, 21 years of age, and a graduate of the Shelby high school. She had had experience as a telephone operator in Shelby and nearly 6 months' experience as a telephone girl in a cosmopolitan hotel. She made a date with defendant to go to dinner with him before she saw him and before he had seen her. She explained to him over the phone how she was dressed so he would know her on the street or at the entrance of the hotel. She met him in pursuance of this appointment and both appear to have been mutually attracted. She went to dinner with him and afterward to the theatre. The third or fourth time after she saw him she submitted to his embraces. She does not claim that he made her any promises, in fact she states that he made her no promises. He said

nothing about marriage; he neither enticed nor deceived her, and she does not say that he flattered her.    He did urge her to have sexual intercourse with him, but it has been held that coaxing or persuasion to have sexual intercourse is not "seduction by artifices." *Breon* v. *Henkle*, 14 Ore. 500 (13 Pac. 289).    The testimony shows this was simply a case where two unmarried people met by accident and were sexually attracted to each other.    This attraction was supplemented by opportunity and they improved the opportunity.    It was fornication, but was not seduction. These acts present a far different question than does a case where a man gains the love of a young girl and then by the aid of promises and artifices uses it to gratify his sexual promptings.

In considering a similar case, the Oregon court said:

"An action for obtaining property fraudulently cannot be maintained without proof of facts calculated to deceive a person of ordinary prudence; and how can a female a long way beyond girlhood claim to have been defrauded of that which every womanly instinct of her nature prompts her to set the highest value upon, by 'flattery, false promises, artifice, urgent importunity, based upon professions of attachment,' unless they are of such a character as are calculated to mislead an ordinarily prudent and virtuous minded woman?

"The individuality of the female sex has been materially advanced during the past few years; their knowledge of the world has been greatly improved, and their legal capacity enlarged.    The notion that they belong to the weaker sex is only entertained by the credulous and unsophisticated.    They are not easily beguiled, and should be held to a reasonable responsibility; and if allowed to maintain an action for their own seduction, and demand a large compensation for their loss of character, should be required to prove something more than mere importunity as the means through which it was accomplished."

The facts as related by plaintiff do not make de-

fendant guilty of seduction. No act of defendant is related which would bring him within any definition of seduction, unless it is her statement that he made love to her. She explains upon cross-examination that she meant by the term "love" that he told her how much he thought of her. This element has in some cases been held sufficient to establish seduction, but in most of those cases the girl yielded only after a prolonged period of love making and not after a few days of flirtation, as occurred in this case. The record does not disclose any such love making during the few days they were acquainted as to justify using it as a basis for an action of seduction. The plaintiff is, indeed, unfortunate, but this furnishes no reason for doing violence to the rules of law.

The judgment should be reversed.

MOORE, J., concurred with BIRD, J.