*569
 
 McDonald, P.J.
 

 These consolidated appeals present questions of first impression in Michigan regarding whether to recognize a cause of action for breach of fiduciary duty against a member of the clergy who engaged in a sexual relationship with a parishioner. In Docket No. 204107, plaintiff Linda Teadt appeals by leave granted the trial court’s order granting summary disposition in favor of defendants St. John’s Evangelical Lutheran Church of Burr Oak, Michigan (St. John’s) and Robert Garbisch. In Docket No. 204118, defendants Lutheran Church Missouri Synod and Michigan District Lutheran Church Missouri Synod appeal by leave granted the trial court’s order granting in part and denying in part their motion for summary disposition. We affirm in part and reverse in part.
 

 This case arises out of a relationship between plaintiff and Garbisch that spanned from late 1989 or early 1990 until the fall of 1994. During the relationship, plaintiff and Garbisch were both adults and were both married to others. Garbisch was the pastor of defendant St. John’s church during the relationship. Garbisch was also a “circuit counselor” for the district, a circuit counselor being a pastor elected by more than one congregation who serves as a communication link between pastors and congregations and congregations and the district. Defendant synod describes itself as “a union of congregations which have voluntarily organized to create the Synod.” Defendant district is a “division[] of the Synod, organized by the Synod.”
 

 Plaintiff’s relationship with Garbisch began when Garbisch visited her at home before surgery on her' lower back. The parties agree that Garbisch initially
 
 *570
 
 assumed the role of a pastoral counselor and attempted to help plaintiff with several personal difficulties she faced.
 
 [1]
 
 The parties also agree that at some later point plaintiff and Garbisch engaged in a sexual relationship, which was not in any way related to or condoned under church doctrine. However, plaintiff and defendants dispute the context in which the sexual relationship between plaintiff and Garbisch occurred.
 

 Plaintiff’s position is that the counseling relationship continued and that Garbisch used counseling in order to initiate a sexual relationship with her. Plaintiff also claims that before initiating a sexual relationship, Garbisch engaged in an inappropriate course of conduct such as appearing at her home and school, giving her personal greeting cards and inspirational messages, and discussing inappropriate subjects, including “his perceived sexual inadequacies and private parts.” Plaintiff alleges that Garbisch began making sexual advances toward her and that, when she protested, he misled her with his “distorted views of Christian morality,” which confused plaintiff because of Garbisch’s “superior” status as pastor of her church.
 
 [2]
 
 Plaintiff claims that Garbisch became involved in her life to the extent that his financial and emotional assistance to her was in exchange for sexual relations. Moreover, according to plaintiff, the
 
 *571
 
 synod, the district, and St. John’s had a responsibility to either prevent Garbisch from abusing his ministerial role or to intervene and end the relationship in order to protect plaintiff. Plaintiff asserts that St. John’s, the district, and the synod were aware of the relationship and should have ended Garbisch’s behavior.
 

 Garbisch claims his relationship with plaintiff was entirely consensual. According to Garbisch, while he initially offered counseling services to plaintiff, their relationship developed into a friendship and eventually into a sexual relationship. Garbisch testified at his deposition that while he continued to discuss plaintiff’s personal difficulties and continued to attempt to assist her with her problems during their sexual relationship, at that point in time his assistance was as an individual and a friend rather than as a counselor.
 

 Garbisch resigned as pastor of St. John’s toward the end of 1994 and moved away. The sexual relationship between plaintiff and Garbisch ended at about that same time. Plaintiff later filed her complaint against defendants. Relevant to this appeal are plaintiff’s claims against Garbisch for breach of fiduciary duty, intentional infliction of emotional distress or negligent infliction of emotional distress, her claims against St. John’s for negligent supervision, and retention, and her claims against the synod and the district for vicarious liability and negligent hiring, supervision, and retention.
 
 [3]
 

 
 *572
 
 The synod and the district were the first to file a motion for summary disposition in the trial court. They made their motion under MCR 2.116(C)(4), (8), and (10). ' The motion was heard by a judge other than the one assigned to the case because the judge assigned to the case was on vacation. Following argument of counsel, the court announced it would grant in part and deny in part the synod and district’s motion, saying it saw an issue of fact with regard to the vicarious liability and negligent hiring, supervision, and retention causes of action. Specifically, the trial court found there were questions regarding whether Garbisch’s actions were outside the scope of his authority as a pastor and as a circuit counselor, which precluded summary disposition of plaintiff’s vicarious liability claim. The trial court also found that questions of fact remained regarding the adequacy of the system for dealing with abuse allegations within the synod and the district that precluded summary disposition of plaintiff’s claim of negligent hiring, supervision, and retention.
 

 St. John’s later made a motion for summary disposition of plaintiff’s claims against it for vicarious liability and negligent hiring, supervision, and retention under MCR 2.116(C)(4), (8), and (10), which was heard by the judge assigned to the case. The trial court granted St. John’s motion with respect to plaintiff’s claim of vicarious liability under a respondeat superior theory under MCR 2.116(C)(10), finding that no factual development could sustain plaintiff’s claim because Garbisch’s actions of engaging in a sexual relationship with a parishioner and counselee were clearly outside the scope of his employment. The trial court also granted summary disposition to St. John’s
 
 *573
 
 with regard to plaintiffs claim of negligent hiring because plaintiff conceded St. John’s had no reason to anticipate Garbisch’s actions when it hired him. Next, the trial court addressed St. John’s motion regarding plaintiffs claim of negligent supervision and retention. The trial court found there were questions of fact regarding St. John’s duty to further investigate the situation once a member of the board of elders raised his concerns regarding rumors of a relationship between Garbisch and plaintiff at a board of elders meeting. However, the trial court eventually ruled that Garbisch had no recognized legal duty to plaintiff because Michigan had not yet recognized a cause of action for breach of fiduciary duty in this context. Near the end of the hearing in which the trial court announced its ruling, Garbisch made an oral motion for summary disposition under MCR 2.116(C)(8), relying on the arguments raised by St. John’s, the synod, and the district. The trial court granted Garbisch’s motion, reasoning that the underlying duty owed by Garbisch must be identified as a matter of law, and Michigan law did not currently recognize such a duty.
 
 [4]
 
 This Court granted leave to appeal to plaintiff and to defendants synod and district on the trial court’s adverse rulings to these parties.
 

 Plaintiff first argues the trial court erred in granting summary disposition to Garbisch based on its finding that her breach of fiduciary duty claim against Garbisch arising out of their sexual relationship was not cognizable under Michigan law. Plaintiff’s theory is that Garbisch is hable for the physical, emotional,
 
 *574
 
 and psychological damages that she incurred as a result of the relationship because Garbisch misused his ministerial position of superiority and trust. Plaintiff acknowledges that whether to recognize such a cause of action is an issue of first impression in Michigan. Plaintiff urges this Court to adopt the reasoning of
 
 FG v MacDonell,
 
 150 NJ 550; 696 A2d 697 (1997), where the Supreme Court of New Jersey recognized a cause of action for breach of fiduciary duty in the context of a sexual relationship between a clergyman and a parishioner that occurred while the clergyman was providing pastoral counseling to the parishioner.
 

 We review the trial court’s grant or denial of summary disposition de novo.
 
 VandenBerg v VandenBerg,
 
 231 Mich App 497, 499; 586 NW2d 570 (1998). Whether to recognize plaintiff’s cause of action for breach of fiduciary duty in this context is a question of law. Questions of law are reviewed de novo.
 
 Hagerman v Gencorp Automotive,
 
 457 Mich 720, 727; 579 NW2d 347 (1998).
 

 We first address defendants’ argument that plaintiff’s claim of breach of fiduciary duty essentially alleges the amatory tort of seduction, which has been abolished in Michigan by statute, MCL 600.2901(3); MSA 27A.2901(3). This Court defined the tort of seduction in
 
 Cotton v Kambly,
 
 101 Mich App 537, 539; 300 NW2d 627 (1980), as
 

 “the act of persuading or inducing a woman of previously chaste character to depart from the path of virtue by the use of any species of acts, persuasions, or wiles which are calculated to have, and do have, that effect, and resulting in her ultimately submitting her person to the sexual embraces of the person accused.” [quoting
 
 Savage v Embrey,
 
 216 Mich 123, 127; 184 NW 503 (1921).]
 

 
 *575
 
 The Legislature long ago abolished the civil causes of action for seduction, alienation of affections, and criminal conversation.
 
 Cotton, supra
 
 at 539. Currently, MCL 600.2901(3); MSA 27A.2901(3) abolishes the cause of action for “seduction of any person of the age of 18 years or more.” In order to determine whether plaintiffs claim is barred by MCL 600.2901(3); MSA 27A.2901(3), we rely on this Court’s decisions in
 
 Nicholson v Han,
 
 12 Mich App 35; 162 NW2d 313 (1968), and
 
 Cotton v Kambly, supra.
 

 In
 
 Nicholson,
 
 the plaintiff and his wife consulted the defendant, a licensed physician, for marriage counseling. During the counseling, the defendant engaged in a sexual relationship with the plaintiff’s wife. The plaintiff and his wife were divorced, and the plaintiff later filed suit against the doctor alleging that he induced the plaintiff’s wife to engage in a sexual relationship with him and to divorce the plaintiff under the pretext of providing psychiatric and marriage-counseling services. The plaintiff’s complaint against the doctor alleged claims of breach of contract, malpractice, assault and battery, negligence, and fraud. The trial court dismissed all of plaintiff’s claims, but the plaintiff appealed only the trial court’s dismissal of his claims for breach of contract and fraud. After examining the facts the plaintiff alleged in his amended complaint and the gist of the actions for alienation of affections and criminal conversation, this Court affirmed the trial court’s finding that the plaintiff’s claims of breach of contract and fraud were barred by the statute abolishing actions for alienation of affections and criminal conversation.
 
 Nicholson, supra
 
 at 43-44.
 

 
 *576
 
 In Cotton, the plaintiff sued her psychiatrist and his employer after the psychiatrist engaged in sexual intercourse with her during the course of her psychiatric treatment or under the guise of psychiatric treatment. The plaintiff claimed she suffered mental and emotional damages and alleged wilful misconduct, negligence, malpractice, fraudulent misrepresentation, and deceit against the psychiatrist. This Court reversed the trial court’s dismissal of the plaintiff’s complaint, holding that the plaintiff’s malpractice claim was not barred by the statutes abolishing the civil cause of action for seduction.
 
 Cotton, supra
 
 at 542. First, this Court found that
 
 Nicholson
 
 was not dispositive because in
 
 Nicholson
 
 the plaintiff’s malpractice claim was not the subject of the appeal.
 
 Id.
 
 at 540. Next, this Court compared the allegations of the plaintiff’s complaint with the definition of medical malpractice and found no reason to distinguish the type of malpractice alleged by the plaintiff, i.e., that the defendant induced her to engage in sexual relations with him as part of therapy, from any other type of medical malpractice, such as a defective operation or improper administration of a drug.
 
 Id.
 
 at 540-541. Explaining that in each malpractice situation “the essence of the claim is the doctor’s departure from proper standards of medical practice,” this Court concluded that seduction was not the gist of the plaintiff’s malpractice claim.
 
 Id.
 
 at 541. This Court reached this conclusion even though the facts alleged by the plaintiff might also state a cause of action for common-law seduction.
 
 Id.
 

 Turning to the case at bar, we examine the gravamen of plaintiff’s first amended complaint, looking beyond the labels used by plaintiff.
 
 Nicholson, supra
 
 
 *577
 
 at 42-43;
 
 Cotton, supra
 
 at 540. Several of the allegations in the complaint are similar to allegations this Court would expect if a plaintiff were suing for seduction. For example, plaintiff alleges that Garbisch initiated and pursued a relationship with her that was at first nonsexual by doing things such as visiting her at home, in the hospital, and at school. Plaintiff also alleges that Garbisch began making sexual advances to plaintiff, “exposing his private parts” to plaintiff, and fondling plaintiff, all of which resulted in a sexual relationship between them. Plaintiff claims that during their sexual relationship, Garbisch promised to marry her and encouraged her to divorce her husband. These allegations are similar to those made when seduction was a viable cause of action in Michigan. See
 
 Savage, supra
 
 at 126-127.
 

 However, plaintiffs first amended complaint also includes allegations that seem to take it beyond merely stating a claim of seduction. Specifically, plaintiff alleges that when she protested in response to Garbisch’s sexual advances, Garbisch misled her “with his own distorted views of Christian morality, in a way that confused and intimidated plaintiff, . . . given . . . Garbisch’s ‘superior’ status as pastor of her church.” Moreover, plaintiff alleges that “[i]n the guise of offering ‘Christian guidance’ and counseling, . . . Garbisch began to wrongfully manipulate [her] thought process and decision making in ways that were personally gratifying to him, yet terribly self-destructive and damaging” to plaintiff. These allegations that Garbisch misused his superior position as her pastor and counselor in order to achieve a sexual relationship with her suggest that seduction is not the gist of plaintiff’s complaint. See
 
 Cotton, supra
 
 at 541.
 
 *578
 
 If seduction is not the gist of plaintiffs complaint, then her cause of action is not precluded by MCL 600.2901(3); MSA 27A.2901(3).
 

 However, plaintiffs allegations that Garbisch misused his superior position as her pastor and counselor in order to achieve a sexual relationship with her also reveal that the gist of plaintiffs action is in fact clergy malpractice. See
 
 id.
 
 Illustrative of this conclusion is plaintiffs allegation that Garbisch owed a duty to her and to the other defendants in this case to “practice his religious calling in a reasonable, legal and appropriate manner, and to refrain from any acts or omissions that would violate his ministerial trust, and to function in a legal and moral fashion as appropriate to the role of pastor.” Michigan does not recognize a claim of clergy malpractice.
 
 Isley v Capuchin Province,
 
 880 F Supp 1138, 1160 (ED Mich, 1995);
 
 Dlaikan v Roodbeen,
 
 206 Mich App 591, 594; 522 NW2d 719 (1994). In fact, the claim of clergy malpractice has been universally rejected by courts in the United States. See
 
 Dausch v Rykse,
 
 52 F3d 1425, 1432, n 4 (CA 7, 1994) (collecting cases from state supreme courts holding no cause of action for clergy malpractice);
 
 Borchers v Hrychuk,
 
 126 Md App 10, 23-24; 727 A2d 388 (1999);
 
 Doe v Evans,
 
 718 So 2d 286, 291 (Fla App, 1998), lv gtd 735 So 2d 1284 (Fla, 1999);
 
 FG, supra
 
 at 561-562. The Supreme Court of New Jersey has aptly stated the First Amendment problems created by a claim of clergy malpractice:
 

 First, such a claim requires definition of the relevant standard of care. Defining that standard could embroil courts in establishing the training, skill, and standards applicable for members of the clergy in a variety of religions with widely varying beliefs. Furthermore, defining
 
 *579
 
 such a standard would require courts to identify the beliefs and practices of the relevant religion and then to determine whether the clergyman had acted in accordance with them. The entanglement could restrain the free exercise of religion.
 
 [FG, supra
 
 at 562 (citations omitted).]
 

 Plaintiff urges us to recognize her claim as one for breach of a fiduciary duty rather than clergy malpractice. We have examined authorities from other jurisdictions that have made such a distinction. See
 
 Doe v Evans, supra; FG, supra
 
 at 565 (holding that “[ujnlilce an action for clergy malpractice, an action for breach of fiduciary duty does not require establishing a standard of care and its breach,” but instead, to establish a fiduciary duty, proof is required that the parishioner “trusted and sought counseling from the pastor” and “[a] violation of that trust constitutes a breach of the duty)”;
 
 Moses v Diocese of Colorado,
 
 863 P2d 310, 321, n 13 (Colo, 1993) (explaining that the fundamental difference between a cause of action for breach of fiduciary duty and a cause of action for clergy malpractice is “the former is a breach of trust and does not require a professional relationship or a professional standard of care, while the latter is an action for negligence based on a professional relationship and a professional standard of care.”) However, we are not persuaded by these authorities that there is such a distinction on the record before us.
 

 We believe our concerns with making a distinction between a cause of action for clergy malpractice and a cause of action for breach of fiduciary duty are succinctly stated by the court in
 
 Langford v Roman Catholic Diocese of Brooklyn,
 
 177 Misc 2d 897, 901; 677 NYS2d 436 (1998). There, the court explained:
 

 
 *580
 
 [I]n order for [the] plaintiff’s cause of action to meet constitutional muster, the jury would have to be able to determine that a fiduciary relationship existed and premise this finding on neutral facts. The insurmountable difficulty facing plaintiff, this court holds, lies in the fact that it is impossible to show the existence of a fiduciary relationship without resort to religious facts. In order to consider the validity of [the] plaintiff’s claims of dependency and vulnerability, the jury would have to weigh and evaluate, inter alia, the legitimacy of [the] plaintiff’s beliefs, the tenets of the faith insofar as they reflect upon a priest’s ability to act as God’s emissary and the nature of the healing powers of the church. To instruct a jury on such matters is to venture into forbidden ecclesiastical terrain. On the other hand, if we try to salvage [the] plaintiff’s claim by stripping her narrative of all religious nuance, what is left makes out a cause of action in seduction—a tort no longer recognized in New York—but not in breach of a fiduciary duty.
 

 We believe plaintiff in this case faces the same insurmountable difficulty. In this case plaintiff cannot establish any imbalance of power in the relationship or explain why she would repose trust in Garbisch without resorting to the fact that Garbisch was her pastor.
 
 [5]
 
 In other words, “religion is not merely incidental to . . . plaintiffs relationship with . . . defendant, it is the foundation for it.”
 
 Amato v Greenquist,
 
 287 Ill App 3d 921, 931; 223 Ill Dec 261; 679 NE2d 446 (1997);
 
 HRB v JLG,
 
 913 SW2d 92, 99 (Mo App, 1995). Moreover, we hesitate to allow a cause of action for breach of fiduciary duty in the context of interpersonal relationships. This Court has explained that a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on
 
 *581
 
 the judgment and advice of another.
 
 Vicencio v Ramirez,
 
 211 Mich App 501, 508; 536 NW2d 280 (1995). Relief is granted when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed.
 
 Id.
 
 A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to matters within the scope of the relation.
 
 Melynchenko v Clay,
 
 152 Mich App 193, 197; 393 NW2d 589 (1986), citing 1 Restatement Trusts, 2d, § 2, Comment b, p 6. To apply these principles to the case before us, where no financial transactions are involved, it appears Garbisch’s duty would be to act in a way that would benefit plaintiff emotionally, if she reposed faith, confidence, and trust and relied on his judgment and advice. Such a duty is impossible to define and has far-reaching implications. We refuse to impose such a duty.
 

 For all of these reasons, we find plaintiff’s claim of breach of fiduciary duty against Garbisch is not cognizable under Michigan law. Accordingly, the trial court properly granted summary disposition to Garbisch with regard to plaintiff’s claim of breach of fiduciary duty. MCR 2.116(C)(8).
 

 Plaintiff next argues the trial court erred in dismissing her claim of intentional infliction of emotional distress against Garbisch.
 
 [6]
 
 The trial court never expressly addressed this claim. However, because this Court reviews the trial court’s grant or denial of summary disposition de novo,
 
 VandenBerg, supra
 
 at
 
 *582
 
 499, we will evaluate whether summary disposition was appropriate in this case. See
 
 Smith v Calvary Christian
 
 Church, 233 Mich App 96, 113; 592 NW2d 713 (1998), lv pending.
 

 In order to state a claim of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress.
 
 Id.) Doe v
 
 Mills, 212 Mich App 73, 91; 536 NW2d 824 (1995). Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.
 
 Id.
 
 It has been said that the case is generally one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim “Outrageous!”
 
 Id.
 
 In
 
 Doe, id.
 
 at 92, this Court explained that “it is initially for the court to determine whether the defendant’s conduct reasonably may be regarded as so extreme and outrageous as to permit recovery.” However, “where reasonable [persons] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.”
 
 Id.,
 
 citing 1 Restatement Torts, 2d, § 46, comment h, p 77.
 

 We find that plaintiff’s allegations are insufficient as a matter of law to sustain a cause of action for intentional infliction of emotional distress. Stripped of religious overtones, plaintiff essentially alleges that a person pursued her, an adult woman, gained her
 
 *583
 
 trust, and eventually engaged in a consensual sexual relationship with her, albeit that her consent was given when she was in a vulnerable position. This type of activity does not rise to the level of conduct necessary to satisfy the standard articulated in
 
 Doe v Mills, supra.
 
 Because defendant’s conduct could not be reasonably regarded as extreme and outrageous, plaintiff has failed to state a claim on which relief may be granted and summary disposition was appropriate under MCR 2.116(C)(8).
 

 Because plaintiff failed to establish that Garbisch committed any actionable misconduct, her claims against St. John’s, the synod, and the district for any alleged negligent supervision of Garbisch must fail. See
 
 Harts v Farmers Ins Exchange,
 
 461 Mich 1, 12; 597 NW2d 47 (1999). Moreover, because plaintiff is unable to establish liability against Garbisch, the alleged agent, she is unable to establish vicarious liability against the alleged principals, the synod and the district.
 
 [7]
 

 Id.
 
 Accordingly, we affirm the trial court’s grant of summary disposition in favor of St. John’s, and we reverse the trial court’s ruling with regard to the summary disposition motions of the synod and the district. The trial court should have granted summary disposition in favor of all defendants with regard to all plaintiff’s claims. In light of this disposition, we save for another day the serious constitutional questions raised by the synod and district.
 

 Affirmed in part and reversed in part.
 

 [1]
 

 We find it unnecessary to detail plaintiffs numerous personal problems here.
 

 [2]
 

 The record is not entirely clear at what point in the relationship plaintiff became a member of St. John’s. Plaintiffs appellate brief indicates she was not a practicing member of any congregation when Garbisch first visited her home. However, it is clear from the record that plaintiff did at some point begin attending services at St. John’s and getting involved in church programs, such as Sunday school.
 

 [3]
 

 Plaintiff does not challenge the trial court’s grant of summary disposition in favor of St. John’s with regard to her claim of vicarious liability.
 

 [4]
 

 Plaintiff waived the notice requirement on Garbisch’s motion.
 

 [5]
 

 In fact, plaintiff appears to admit that initially Garbisch was not even
 
 her
 
 pastor, because she was not involved in any church when he began visiting her.
 

 [6]
 

 Plaintiff’s brief also mentions the tort of negligent infliction of emotional distress. However, this cause of action is clearly not applicable to the facts here because Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result.
 
 Duran v Detroit News, Inc,
 
 200 Mich App 622, 629; 504 NW2d 715 (1993).
 

 [7]
 

 As noted in n 3,
 
 supra,
 
 plaintiff does not challenge the trial court’s grant of summary disposition in favor of St. John’s with regard to her claim of vicarious liability. In any event, had plaintiff challenged the trial court’s ruling regarding this issue, her claim would fail for the same reason.