*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LUCIOUS CONWAY,

        Plaintiff-Appellant,

v

DETROIT PUBLIC SCHOOL COMMUNITY DISTRICT, DR. NIKOLAI VITTI, JOHN R. KING ACADEMIC AND PERFORMING ARTS ACADEMY, JENNIFER SPENCER, SHARON SKLAR, BREIA KILGO, BENJAMIN JACKSON, STEPHANIE CARRECKER, JENICE C. MITCHELL FORD, ANGELIQUE PETERSON-MAYBERRY, MISHA STALLWORTH, DEBORAH HUNTER-HARVILL, GEORGIA LEMMONS, CORLETTA VAUGHN, SONYA MAYS, and SHERRY GAY-DAGNOGO,

        Defendants-Appellees,
and

DETROIT PUBLIC SCHOOL BOARD OF EDUCATION,

        Defendant.

UNPUBLISHED
March 23, 2023

No. 360875
Wayne Circuit Court
LC No. 21-008985-NO

Before: GADOLA, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

      Plaintiff appeals as of right the trial court's order granting defendants summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTS

Plaintiff, Lucious Conway, brought this tort action asserting claims arising out of the employment relationship between his sister, Cheryl Conway (Conway), and defendants. Defendants are Detroit Public School Community District (DPSCD), Detroit Public School Board of Education (DPSBE), John R. King Academic and Performing Arts Academy (JRK Academy), and several named individuals who are administrators or employees of either DPSCD, DPSBE, or JRK Academy.

In 2018, plaintiff moved to Detroit to live with Conway and to assist her with caring for their mother, who died on November 9, 2020. In 2020, Conway was employed by DPSCD as a clerical worker at JRK Academy. Conway tested positive for COVID-19 in December 2020 and thereafter worked from home, as did other staff, until January 6, 2021. About that time, plaintiff, who was living with Conway, was hospitalized for three days for elevated blood sugar and Acquired Immunodeficiency Syndrome (AIDS)-related infections.

In late January 2021, Conway again tested positive for COVID-19 and received approval from her supervisor to work from home until February 4, 2021. On February 5, 2021, Conway filed for unemployment compensation benefits on the basis that she was "not permitted to work from home or in-person because of" her COVID-19 diagnosis. Conway's request for benefits was denied because DPSCD identified Conway as a full-time employee.[1] Conway requested additional time to work from home and additional paid sick leave, which defendants denied. After a series of exchanges with her employer, Conway was terminated from her position for job abandonment.

Plaintiff initiated this lawsuit against defendants alleging disability discrimination under the Persons with Disabilities Civil Rights Act (PDCRA), MCL 37.1101 *et seq*., intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, negligent retention, and negligent supervision relating to the termination of Conway's employment. In lieu of filing an answer, defendants moved for summary disposition under MCR.116(C)(5), (7), and (8) contending that plaintiff lacked standing and failed to state a claim upon which relief could be granted. The trial court granted defendants summary disposition under MCR 2.116(C)(10), finding that plaintiff lacked standing to assert the discrimination claim, had failed to establish genuine issues of material fact to sustain his claims of intentional and negligent infliction of emotional distress, and that plaintiff's claims of negligent hiring, supervision, and retention could not be established in light of the lack of merit regarding the other claims. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff contends that the trial court erred by granting defendants summary disposition under MCR 2.116(C)(10) because sufficient facts were presented to establish genuine issues of

---

[1] According to plaintiff's complaint, plaintiff represented Conway in her appeal of the denial of unemployment compensation benefits to the administrative tribunal.

material fact regarding his claims of intentional and negligent infliction of emotional distress.[2] We disagree.

## A. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

To establish a prima facie claim of intentional infliction of emotional distress, plaintiff was required to demonstrate that (1) defendants' extreme and outrageous conduct, (2) intentionally or recklessly (3) caused (4) plaintiff's severe emotional distress. See *Swain v Morse*, 332 Mich App 510, 534; 957 NW2d 396 (2020). Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Id*., quoting *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). Rather, "[l]iability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Swain*, 322 Mich App at 534 (quotation marks and citation omitted). The trial court initially is required to determine whether the defendant's alleged conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery." *Id*. (quotation marks and citation omitted). "The test is whether the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Id*. (quotation marks and citation omitted).

In this case, the conduct alleged by plaintiff as extreme and outrageous involves a dispute between Conway and her employers. Plaintiff alleges that defendants denied Conway paid sick leave, terminated Conway for job abandonment, engaged in an e-mail exchange discussing the date of a Board of Education meeting in which Conway's termination was to be voted upon, failed to provide plaintiff and Conway an opportunity to speak at the meeting, sent two e-mails informing Conway she was not approved to work from home and was required to return to work in-person after proof of a negative COVID-19 test, and daily phone calls and e-mails from coworkers to Conway regarding her whereabouts.

---

[2] Plaintiff does not challenge on appeal the trial court's dismissal of his claims of disability discrimination under the PDCRA, negligent hiring, negligent supervision, and negligent retention.

Notably, this dispute involved Conway's relationship with her employer and did not directly involve plaintiff. Moreover, even when aggregated, these events do not rise to the level of extreme and outrageous conduct. A job dispute related to work attendance, in conjunction with a series of communications regarding the status of the employment, does not rise to the level of outrageousness that is "utterly intolerable in a civilized community." See *Swain*, 322 Mich App at 534. In addition, the alleged actions of Conway's coworkers are not attributable to defendants. Plaintiff failed to demonstrate that defendant's actions were extreme or outrageous, and thus failed to meet the threshold requirement to establish a prima facie claim of intentional infliction of emotional distress.

Plaintiff also failed to demonstrate that defendants had the requisite intent to cause plaintiff emotional distress. A plaintiff must show either that "a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that any reasonable person would know emotional distress would result." *Lewis v LeGrow*, 258 Mich App 175, 197; 670 NW2d 675 (2003) (citation and quotation marks omitted). Here, defendants' conduct was directed to Conway, not to plaintiff. The only conduct defendants directed to plaintiff were two e-mails plaintiff received in response to his initial inquiry regarding the unfairness of changing the date of the Board of Education meeting. The first was a confirmation of the meeting date, and the second was a statement that there were no pending matters regarding Conway after defendants terminated her employment. The content of the e-mails was informational, and neither extreme nor outrageous. Plaintiff argues that he experienced emotional distress as a by-product of his supporting Conway as she dealt with defendants; plaintiff e-mailed DPSCD regarding the Board meeting, represented Conway in her appeal for unemployment benefits, and assisted Conway with her communications with defendants. Defendants' actions, however, as alleged by plaintiff, were not so reckless that "any reasonable person would know emotional distress would result." *Lewis*, 258 Mich App at 197.

Finally, plaintiff failed to demonstrate that he endured severe emotional distress as a result of defendants' termination of Conway's employment. Plaintiff asserted he suffered mental anguish, anxiety, sleeplessness, vomiting, diarrhea, humiliation, nervousness, and embarrassment from witnessing Conway suffer and from "fearing for his own life" because Conway's loss of employment threatened the stability of his housing and the assistance he receives from Conway. Although emotional distress "includes all highly unpleasant mental reactions" such as the ones identified by plaintiff, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Haverbush v Powelson*, 217 Mich App 228, 235; 551 NW2d 206 (1996) (citation and quotation marks omitted). There is nothing in the record indicating plaintiff's concern for his sister's employment situation rose to the level the law requires.[3] *Id*. In sum, the trial court did into err by finding that plaintiff failed to demonstrate the elements necessary to establish intentional infliction of emotional distress.

---

[3] Plaintiff alleged that he was hospitalized for three days in January 2020. However, this hospitalization happened before the events at issue occurred, and was not related to defendants' conduct.

## C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Negligent infliction of emotional distress ordinarily is recognized when a plaintiff witnesses negligent injury to a third party that results in the plaintiff suffering mental disturbance. *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 581 n 6; 603 NW2d 816 (1999). A plaintiff asserting negligent infliction of emotional distress must establish that "(1) the injury threatened or inflicted on the third person is a serious one, of a nature to cause severe mental disturbance to the plaintiff, (2) the shock results in actual physical harm, (3) the plaintiff is a member of the third person's immediate family, and (4) the plaintiff is present at the time of the accident or suffers shock 'fairly contemporaneous' with the accident." *Taylor v Kurapati*, 236 Mich App 315, 360; 600 NW2d 670 (1999) (citation and quotation marks omitted).

Here, plaintiff asserted that he suffered mental anguish in response to Conway's purported suffering over the loss of her employment, and also suffered fear that the housing and care Conway was providing him was jeopardized by her loss of employment. Plaintiff, however, failed to establish the first element, that the injury threatened or inflicted upon Conway was a serious one that would cause severe mental disturbance to the plaintiff. Conway was terminated from her employment because she failed to report for work. While losing one's employment may be upsetting, it cannot reasonably be described as so serious that observing Conway lose her employment would cause plaintiff severe mental disturbance.[4]

Plaintiff also failed to establish that his alleged physical manifestations were a result of Conway losing her employment. A valid claim for negligent infliction of emotional distress is set forth only when the plaintiff can establish that the emotional distress resulted in the plaintiff's *physical* manifestations of that distress. *Henry v Dow Chem Co*, 473 Mich 63, 79; 701 NW2d 684 (2005). "Where the defendant's negligence causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, and in the absence of some other independent basis for tort liability, the great majority of courts still hold that in the ordinary case there can be no recovery." *Id*. at 79 n 9, citing Prosser & Keeton, Torts (5th Ed), § 54, p 361. Here, plaintiff alleged that as a result of Conway's dispute with defendants, he experienced sleeplessness, depression, diarrhea, vomiting, listlessness, and "other physically detrimental outcomes." However, plaintiff also acknowledged that before Conway's dispute with defendants, he was suffering poor health as a result of diabetes, stress related to the death of his mother, and AIDS-related infections. Plaintiff has not established that the physical conditions he allegedly

---

[4] In *Pate v Children's Hosp of Michigan*, 158 Mich App 120, 123; 404 NW2d 632 (1986), for example, this Court held that "while presence at the side of a loved one at the time of her death is certainly a grievous event, without more it is simply not the sort of inherently shocking and sudden event to which the doctrine of bystander recover[y] for emotional distress and resulting physical injury was intended to apply." Given that this Court found witnessing the death of a loved one insufficient to establish negligent infliction of emotional distress, we conclude that witnessing a loved one lose her job is not sufficient to give rise to such a claim.

experienced after Conway was fired from her job resulted from that occurrence and were not further manifestations of his pre-existing illness.

In addition, plaintiff relies on several events to support his claim of negligent infliction of emotional distress, rather than a single shocking event. To establish a claim of negligent infliction of emotional distress, the plaintiff must establish that he or she was present at the time of an "accident" that inflicted injury upon the third person, and that the plaintiff suffered shock "fairly contemporaneous" with the accident. *Taylor*, 236 Mich App at 360. This Court has interpreted "accident" to refer to a "sudden, brief, and inherently shocking accidental event which causes the injury or death, which contemporaneously, and by its very nature, results in emotional and physical injury to the plaintiff." *Pate*, 158 Mich App at 123. Plaintiff witnessed the unhappiness experienced by Conway upon losing her job, not a traumatic or shocking singular event necessary to support plaintiff's claim. Absent evidence that he witnessed a single shocking event that gave rise to a serious injury to Conway, plaintiff failed to allege the required elements of negligent infliction of emotional distress. The trial court did not err by granting defendants summary disposition.

Affirmed.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Noah P. Hood

-6-