*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BROOKS WILLIAMSON & ASSOCIATES, INC.,
and BROOKS B. WILLIAMSON,

        Plaintiffs-Appellants,

v

THOMAS BRAUN, DONALD BERNINGER, and
CHRIS KUNKLE,

        Defendants-Appellees,

and

STACY BRAUN BERNINGER, GREG SCHMULT,
BWA CONSULTING, BERNINGER WETLAND
ASSOCIATES, and AARON BROWN,

        Defendants.

UNPUBLISHED
May 12, 2022

No. 357170
Oakland Circuit Court
LC No. 2019-178641-CB

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

In this commercial business dispute, plaintiffs Brooks Williamson & Associates, Inc. ("the company"), and Brooks B. Williamson, appeal as of right, challenging the trial court's orders denying their motion to extend discovery, granting defendants' motion in limine to exclude evidence not disclosed during discovery, excluding proposed expert testimony, striking exhibits submitted by plaintiffs in their response to defendants' motion for summary disposition, granting defendants summary disposition under MCR 2.116(C)(10), denying plaintiffs' motion to amend

their first amended complaint, and granting defendants' motion for sanctions.[1]  For the reasons set forth in this opinion, we affirm.

## I.  BACKGROUND

Plaintiffs filed this action in December 2019.  Their first amended complaint, filed on April 24, 2020, alleged that defendants Thomas Braun, Donald Berninger, and Chris Kunkle were all employees of the company when, in June 2017, they "surreptitiously and without prior notice or approval" conspired to move the company's offices from Wixom, Michigan, to Berninger's home in Plymouth.  Plaintiffs alleged that before June 2017, Berninger offered to purchase the company from Williamson for $100,000, but Williamson declined the offer.  Plaintiffs accused defendants of engaging in a "carefully calculated and strategic campaign of deception, malfeasance, and defalcation" regarding plaintiffs' clients.  They alleged that Berninger formed a competing company, BWA Consulting, LLC, which was done to confuse the company's clients and governmental agencies.

In April 2021, the trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10), but provided that plaintiffs could seek leave to file an amended complaint by April 28, 2021.  On May 3, 2021, the trial court issued an opinion and order denying plaintiffs' motion for leave to file a second amended complaint.  On May 10, 2021, the trial court granted defendants' motion for costs and attorney fees.  In addition to challenging each of these orders, plaintiffs also challenge several pretrial rulings pertaining to discovery.

## II.  THE TRIAL COURT'S RULINGS REGARDING DISCOVERY

Plaintiffs argue that the trial court abused its discretion by (1) denying their motion to extend discovery, (2) granting defendants' motion in limine to exclude evidence not produced during discovery and denying plaintiffs' motion for reconsideration of that order, and (3) striking exhibits submitted in support of plaintiffs' response to defendants' motion for summary disposition because they had been requested but not produced during discovery.

### A.  STANDARDS OF REVIEW

This Court reviews for an abuse of discretion a trial court's decision regarding a party's motion to extend discovery, *Decker v Trux R Us, Inc*, 307 Mich App 472, 478; 861 NW2d 59 (2014), a trial court's decision on a motion in limine, *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 63; 836 NW2d 898 (2013), a trial court's decision on a motion for reconsideration, *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018), and a trial court's decision on a motion to strike, *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 469; 666 NW2d 271 (2003).  A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.  *Decker*, 307 Mich App at 478.

---

[1] Unless indicated otherwise, this opinion uses the term "defendants" to refer to defendants Thomas Braun, Donald Berninger, and Chris Kunkle.  The remaining defendants were dismissed by stipulation.

## B. ANALYSIS

MCR 2.301(B)(1) allows a court to set "the time for completion of discovery . . . by an order entered under MCR 2.401(B)." MCR 2.401(B)(2)(a)(v) provides that the court may enter a scheduling order that establishes a schedule for discovery to be completed. When considering a request for discovery, a court "should consider whether the granting of discovery will facilitate or hamper the litigation." *Nuriel v Young Women's Christian Ass'n of Metro Detroit*, 186 Mich App 141, 146; 463 NW2d 206 (1990). In *McDonald Ford Sales, Inc v Ford Motor Co*, 165 Mich App 321, 330; 418 NW2d 716 (1988), this Court explained that in determining whether to grant a motion to extend discovery,

> the trial court should consider whether the granting or extension of discovery will facilitate rather than impede the litigation. Factors such as the timeliness of the request, the duration of the litigation and the possible prejudice to the parties should also be considered.

Plaintiffs' primary argument in support of their motion to extend discovery was that defendant Berninger did not produce client invoices for BWA Consulting, LLC, that he had addressed during his deposition. In his deposition, Berninger stated that he did not bring invoices from BWA Consulting for the requested period of April 2016 to March 2019 because he did not know where they were. He last saw the documents in early 2018. Berninger denied during his deposition that he had a client list of BWA Consulting, LLC. At the conclusion of the deposition, plaintiffs' counsel asked Berninger to continue to look for a list of BWA Consulting projects, its client list, and the invoices. Following his deposition, Berninger did produce a list of BWA Consulting clients.

The trial court's denial of plaintiffs' motion to extend discovery was within the range of reasonable and principled outcomes. Plaintiffs filed this action in December 2019, and while the specific nature of their claims and the defendants named in the action changed between the filing of the initial complaint and the first amended complaint, which was filed in April 2020, the thrust of plaintiffs' allegations was that defendants engaged in impermissible competitive behavior while employed by the company. The trial court initially entered a scheduling order that required discovery to be completed by June 5, 2020, but later extended that period to November 5, 2020. It would have been reasonable for plaintiffs to seek the BWA Consulting client list and invoices before the notices for defendants' depositions were filed on October 28, 2020, just one week before the discovery cutoff date, or for plaintiffs to file an appropriate motion to compel if requests for those documents were not satisfied. Moreover, plaintiffs did not file their motion to extend discovery until December 17, 2020, six weeks after the deadline for the completion of discovery. Considering that plaintiffs were dilatory in pursuing discovery, that the discovery deadline had been extended previously, and that plaintiffs' motion to further extend the discovery deadline was filed well after the discovery cutoff date, the trial court did not abuse its discretion by denying plaintiffs' motion.

Similarly, to the extent that plaintiffs wanted to call an information technology (IT) expert who had not been disclosed previously, MCR 2.401(I)(2) provides that a trial court may preclude a party from calling as a witness at trial an individual who was not named in the party's witness list, unless the party makes a showing of good cause for failing to name the witness. The trial

court observed that not only did plaintiffs fail to name a potential IT expert in their witness list, they still were not able to definitively name a potential expert or provide any contact information. In addition, they did not attempt to make a showing of "good cause" for allowing the late addition of an IT expert.

Likewise, while plaintiffs promised in their response to produce documentation "within a reasonable time" that they had not produced during discovery, including (1) information that Williamson referred to in his deposition, and (2) the results of the inspection of laptop computers defendants used while employed by plaintiffs, discovery had already concluded on November 5, 2020 and trial was scheduled to begin within 45 days.

Before imposing a sanction for a discovery violation, a court should consider what is just and appropriate under the circumstances, and consider the following factors as relevant:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect[;] and (8) whether a lesser sanction would better serve the interests of justice. This list should not be considered exhaustive. [*Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010).]

The trial court observed that this case had been pending since December 2019, and during the ample extended discovery period, plaintiffs had wilfully failed to provide requested documents "for months." The court also found that plaintiffs failed to make a genuine effort to cure the defect, and trial was only 45 days away. The trial court considered the relevant factors and concluded that allowing plaintiffs to use undisclosed documents or witnesses would result in "a trial by ambush." We are not persuaded that the trial court abused its discretion by holding that the unnamed IT expert could not be called as a witness, or that requested documentation not provided during discovery could not be used at trial.

We also disagree that the trial court abused its discretion by denying plaintiffs' motion for reconsideration of its order precluding the use of undisclosed documents or witnesses. MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

As the trial court correctly observed, plaintiffs merely reiterated the same arguments that they had advanced in support of their response to defendants' motion in limine, and they were unable to

demonstrate any error, palpable and discernible from the record, by which the court had been misled.

Finally, the trial court did not abuse its discretion by granting defendants' motion to strike certain exhibits filed by plaintiffs in support of their response to defendants' motion for summary disposition. Again, the trial court observed that discovery had closed on November 5, 2020, and that in their response to defendants' motion for summary disposition, plaintiffs were relying on several documents that had been requested but not produced during discovery. Although plaintiffs asserted that several of the documents were created by defendants, they did not contest that the information was sought in discovery requests by defendants, but not produced. Under these circumstances, the trial court's decision to strike the contested exhibits that had been requested during discovery but not produced was within the range of reasonable and principled outcomes, and accordingly, the court did not abuse its discretion.

## III. EXPERT WITNESS

Plaintiffs next argue that the trial court abused its discretion by excluding the proposed testimony of Richard Eriksen, whom plaintiffs offered as an expert in business valuations to provide an opinion regarding plaintiffs' damages. We disagree.

### A. STANDARD OF REVIEW

A trial court's decision on a motion to exclude expert testimony is reviewed for an abuse of discretion. *Shivers v Covenant Healthcare Sys*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket Nos. 351638, 351795 & 351863); slip op at 3. A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016) (citation omitted).

### B. ANALYSIS

MRE 702, which governs the admission of expert testimony, provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under MRE 702, the trial court has a "fundamental duty" to act as a "gatekeeper" to ensure that each aspect of an expert witness's testimony, including the data and methodology that forms the basis for the expert's opinion, is reliable. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780-781; 685 NW2d 391 (2004); *Riverbrook v Fabode*, 333 Mich App 645, 658; 963 NW2d 415 (2020), quoting *Elher*, 499 Mich at 22-23. In *Gilbert*, our Supreme Court explained:

This gatekeeper role applies to *all stages* of expert analysis. MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, *but also of the*

*manner in which the expert interprets and extrapolates from those data*. Thus, it is insufficient for the proponent of expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of expertise (such as medicine). *The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology.* [*Gilbert*, 470 Mich at 782 (emphasis added).]

The presence or lack of supporting literature, while not dispositive, is a factor that the trial court may consider in determining whether evidence is reliable. *Elher*, 499 Mich at 23. However, a party may not simply recite an expert's background and experience and argue that the expert's testimony is therefore admissible under MRE 702. *Id*. (citation omitted).

Plaintiffs sought to call Eriksen as an expert on the damages they allegedly incurred because of defendants' alleged breaches of their fiduciary duty to plaintiffs. Therefore, plaintiffs had the burden of establishing that Eriksen was "qualified by knowledge, skill, experience, training, or education" to offer an opinion of the damages that the company allegedly incurred. See *Gilbert*, 470 Mich at 788.

The trial court did not abuse its discretion by excluding Eriksen's proposed expert testimony. As an initial matter, plaintiffs did not meet the threshold requirement of showing that Eriksen was qualified in the area of commercial business valuation "by knowledge, skill, experience, training or education." Ericksen and Williamson were neighbors and social friends. Ericksen stated that Williamson would discuss the case with him and he would share his thoughts with Williamson. Eriksen was candid that he based his opinions on the valuation of plaintiffs' business, and the business that it lost as a result of defendants' conduct, on his legal background, which consisted primarily of tax preparation and tax-related work. Eriksen also conceded that he was not holding himself out as an expert, and that his legal experience did not include handling a case alleging breach of fiduciary duty, and he had not been retained as an expert in any similar cases involving the valuation of a business.

Plaintiffs also failed to demonstrate that Eriksen's proposed testimony was the product of reliable principles and methods and that he reliably applied such principles to the facts of the case. As the trial court observed, Eriksen repeatedly relied on information given to him by Williamson as the basis for his so-called expert opinions, rather than independently applying reliable principles and methods to arrive at valuations. Specifically, Eriksen relied on Williamson's opinions regarding (1) plaintiffs' damages arising from the migration of information from plaintiffs' computers, (2) the valuation of land bank credits, and (3) the value of business that defendants misappropriated from plaintiffs in 2016.

In sum, the trial court did not abuse its discretion by holding that Eriksen did not possess the requisite qualifications to provide an expert opinion, and that his proposed testimony was not based on reliable principles and methods that he reliably applied to the facts of the case.

## IV. SUMMARY DISPOSITION

Plaintiffs also argue that the trial court erred by granting defendants' motion for summary disposition. We disagree.

-6-

This Court reviews a trial court's decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendants moved for summary disposition under MCR 2.116(C)(10). In *El-Khalil*, our Supreme Court explained:

> A motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). [*El-Khalil*, 504 Mich at 160.]

To the extent plaintiffs argue that defendants' relationship with plaintiffs gave rise to a fiduciary duty, "the existence of a duty is generally a question of law[.]" *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012). This Court reviews questions of law de novo. *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 467; 966 NW2d 729 (2021).

A claim for breach of fiduciary duty is grounded in principles of tort law. *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Id.*; see also *Delphi Auto PLC v Absmeier*, 167 F Supp 3d 868, 884 (ED Mich, 2016).

> In *Highfield Beach*, 331 Mich App at 666 n 13, this Court observed that

> "a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 580-581; 603 NW2d 816 (1999). A breach of fiduciary duty arises when a person holding a position of influence and confidence abuses the influence and betrays the confidence. *Id*. at 581. "A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to matters within the scope of the relation." *Id*.

Therefore, when a party alleges a breach of fiduciary duty, "[r]elief is granted when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *Vicencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995). In *Calhoun Co*, 297 Mich App at 20 (citation omitted), this Court explained that a fiduciary relationship arises when one person has a duty to act for the benefit of the other regarding matters within the scope of the relationship, and that such relationships, which include trustee-beneficiary, guardian-ward, agent-principal, and attorney-client, impose the "highest duty of care." This Court stated that a fiduciary relationship will arise in the following circumstances:

> "(1) when one person places trust in the faithful integrity of another, who as a result gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give

advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer." [*Calhoun Co*, 297 Mich App at 20, quoting *In re Karmey Estate*, 468 Mich 68, 74 n 2; 658 NW2d 796 (2003), in turn quoting Black's Law Dictionary (7th ed.).]

In Michigan, it is generally held that an employer-employee relationship will not "give rise to a fiduciary relationship unless the employee is a high-level employee," or a specific agency relationship exists. *Delphi Auto*, 167 F Supp 3d at 884 (citation omitted). High-level employees include those such as corporate officers and members of corporate boards of directors. *Id.*; see also *Bradley v Gleason Works*, 175 Mich App 459, 463; 438 NW2d 330 (1989) (stating that the plaintiff employee did not cite Michigan authority for the principle "that an employer-employee relationship is fiduciary in nature").

We agree with the trial court that plaintiffs failed to establish a genuine issue of material regarding the existence of a fiduciary relationship between any of the defendants and plaintiffs. As the trial court observed, Braun performed invoicing services for the company, and also assisted in collecting receivables. Braun was an employee of the company, he did not sign a noncompete agreement or a confidentiality agreement, and he had very little contact with Williamson while employed by the company. Similarly, Kunkle worked as an employee for the company, initially performing wetland delineations and permitting duties, and then expanding into contract work performing wetland delineations and tree surveys. Kunkle also had minimal contact with Williamson while employed by the company. The evidence does not demonstrate that Braun and Kunkle held positions of trust and confidence within the company, or that they held a position of trust to the extent that they gained superiority over Williamson and the company, or that they assumed responsibility and control over Williamson and the company.

In contrast, although the evidence showed that Berninger had more authority at the company than did Braun and Kunkle, and that his duties extended to writing checks on behalf of the company, Williamson still controlled the company's finances, and Berninger was required to consult with Williamson on financial matters. While plaintiffs attempt to portray Berninger as an employee with supervisory control over the company, or in an elevated position of trust that established his control over Williamson and the company, the record does not bear out this characterization. It is undisputed that Berninger was not an officer or director, did not own a share of the company, and did not have an employment contract with the company. The trial court did not err by holding that plaintiffs failed to establish a genuine issue of material fact regarding whether Braun, Kunkle, and Berninger owed fiduciary duties to Williamson and the company.

Additionally, as the trial court observed, plaintiffs were required to demonstrate that defendants' alleged breaches of their fiduciary duties caused damages to plaintiffs. In support of their response to defendants' motion for summary disposition, plaintiffs presented the company's tax returns and affidavits from customers. The customer affidavits generally indicated that the customers believed that plaintiffs were still associated with BWA Consulting, LLC. Even accepting as true plaintiffs' assertion in their response to defendants' motion that their tax returns reflected a drop in corporate revenue of 25%, or $100,000, in 2016, and another $140,000 in 2017, the record does not otherwise yield genuine issues of material fact concerning whether the alleged loss in business revenue was related to defendants' alleged conduct. While Williamson averred

that defendant Berninger had prepared a client list of ongoing projects from the business that BWA Consulting took over, this exhibit, in and of itself, does not support a theory that any alleged breach of fiduciary duty by defendants caused this loss in revenue. Therefore, we agree with the trial court that plaintiffs failed to demonstrate the existence of genuine issues of material fact for trial with respect to plaintiffs' claim for breach of fiduciary duty.

Accordingly, the trial court did not err by granting defendants' motion for summary disposition.

## V. LEAVE TO AMEND COMPLAINT

Plaintiffs argue that the trial court abused its discretion by denying their motion for leave to file a second amended complaint. We disagree.

This Court reviews a trial court's decision on a motion for leave to amend pleadings for an abuse of discretion. *Kostadinovski v Harrington*, 321 Mich App 736, 742-743; 909 NW2d 907 (2017). "[I]f the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Id*. at 743 (citation omitted).

Under MCR 2.118(A)(2), plaintiffs were required to obtain leave of the court to amend their complaint. Although the rule provides that "[l]eave shall be freely given when justice so requires," and thus a trial court should ordinarily grant a motion seeking leave to amend, *Kostadinovski*, 321 Mich App at 743, leave may be denied for appropriate reasons. In *Kostadinovski*, this Court explained:

> A court must give a particularized reason for denying leave to amend a pleading, and acceptable reasons for denial include undue delay, bad faith or dilatory motive by the party seeking leave, repeated failures to cure deficiencies after previously allowed amendments, undue prejudice to the nonmoving party, and futility. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007); [*Wormsbacher v Phillip R Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009)]. The amendment of a pleading is properly deemed futile when, regardless of the substantive merits of the proposed amended pleading, the amendment is legally insufficient on its face. *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998); *Gonyea v Motor Parts Fed Credit Union*, 192 Mich App 74, 78; 480 NW2d 297 (1991). [*Kostadinovski*, 321 Mich App at 743-744.]

Delay, in and of itself, is not grounds to deny a motion to amend. *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). However, amendment may be denied if the party seeking the amendment acted in bad faith or if the opposing party would be prejudiced because of the delay. *Id*. In *Weymers*, the Court observed that

> "prejudice" exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost. [*Weymers*, 454 Mich at 659.]

Prejudice can also be established where the delay is long, a party seeks to substantially amend a complaint, and amendment is requested on the eve of trial, thereby impeding the opposing party's ability to defend. *Id*. (citation omitted). In *Weymers*, the Court stated:

> We hold that a trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id.* at 659-660.]

The trial court did not abuse its discretion by denying plaintiffs' motion to amend their first amended complaint. As the trial court recognized, plaintiffs unduly delayed in filing their motion. The motion to amend was brought in April 2021, approximately 16 months after the case was initially filed, and more significantly, more than five months after discovery had concluded on November 5, 2020. Moreover, plaintiffs had a history of failing to follow the trial court's scheduling orders. In particular, plaintiffs delayed producing required evidence of their damages and ultimately failed to produce sufficient evidence of damages, and they also attempted to call an IT expert whom they had not even named yet in a witness list or provided any contact information for. Further, plaintiffs' proposed amendment sought to add entirely new claims or theories of relief, despite that, as the trial court observed, plaintiffs "allege[d] no facts that were recently uncovered after the close of discovery." Defendants would be significantly prejudiced by having to defend against entirely new claims well after discovery had closed. Additionally, the trial court did not err by concluding that the proposed amendment would be futile considering that plaintiffs were not in a position to put forth new evidence of damages. For all of these reasons, the trial court did not abuse its discretion by denying plaintiffs' motion for leave to amend their complaint.

## VI. SANCTIONS

Finally, plaintiffs argue that the trial court erred by granting defendants' motion for costs and attorney fees as sanctions under MCL 600.2591 and MCR 1.109. We disagree.

This Court reviews a trial court's decision on a request for sanctions because a claim was frivolous for an abuse of discretion. *Fette v Peters Const Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015). Any factual findings by the trial court are reviewed for clear error. *Id*. "A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Id*. The trial court's interpretation and application of the court rules is reviewed de novo. *New Covert Generating Co, LLC v Covert Twp*, 334 Mich App 24, 89-90; 964 NW2d 378 (2020).

The trial court relied on MCL 600.2591 and MCR 1.109 as authority for its award of sanctions. MCR 1.109(E) states, in pertinent part:

> (5) *Effect of Signature*. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:
>
> (a) he or she has read the document;

-10-

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) *Sanctions for Violation*. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(7) *Sanctions for Frivolous Claims and Defenses*. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCL 600.2591 provides, in pertinent part:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

In *New Covert Generating Co*, 334 Mich App at 91, this Court explained:

"An attorney has an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed." *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). "The

reasonableness of the attorney's inquiry is determined by an objective standard, not the attorney's subjective good faith." *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "A court must determine whether a claim or defense is frivolous on the basis of the circumstances at the time it was asserted." *Id*. at 732. "[A] claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013) (quotation marks and citations omitted).

However, simply because a party does not prevail on a claim does not mean that the claim was frivolous. *Peterson v Oakwood Healthcare, Inc*, 336 Mich App 333, 345; 970 NW2d 389 (2021).

On appeal, plaintiffs focus on the trial court's ruling regarding the legal and factual bases for the claims against Berninger, Braun, and Kunkle. We are not persuaded that the trial court clearly erred by finding that plaintiffs had no factual or legal basis for asserting a claim of breach of fiduciary duty against these defendants. As explained earlier, the trial court correctly concluded that there was no genuine issue of material fact regarding whether defendants owed a fiduciary duty to plaintiffs. While the mere fact that plaintiffs did not prevail on this claim does not render it frivolous, Michigan law is well-settled that a mere employer-employee relationship does not create a fiduciary relationship, absent some sort of other special relationship. Plaintiffs did not demonstrate factual support for any finding that Braun, Berninger, and Kunkle were other than employees of the company, or held positions in which plaintiffs reposed faith, confidence, and trust in them, or that they held positions of trust, confidence, superiority, or influence over plaintiffs. See *Highfield Beach*, 331 Mich App at 666 n 13; *Calhoun Co*, 297 Mich App at 20. Additionally, there was no evidence that Kunkle and Braun in particular were high-level employees, or that they acted in an agency relationship with plaintiffs. Although Berninger held a more elevated position within the company, Williamson oversaw and supervised his financial decisions for the company, which belies any basis for concluding that he held a position of trust and influence over Williamson, or that he assumed control or responsibility over Williamson. See *Delphi*, 167 F Supp 3d at 884. We are not left with a definite and firm conviction that the trial court made a mistake by finding that plaintiffs' claims against Berninger, Braun, and Kunkle were frivolous.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan