*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RANDY ATTO,

        Plaintiff-Appellant,

v

STEPHEN WANDRIE,

        Defendant/Third-Party Plaintiff-
        Appellee,

and

KAIZEN FINANCIAL GROUP, LLC, KAIZEN
WEALTH MANAGEMENT, LLC, ALBERT
LALONDE, OAK GROVE SOLUTIONS,
RETIREMENT DEFENDERS ORG., INC., OAK
GROVE INVESTMENT SERVICES, INC,
KIMBERLY MCENANEY, GERALD
NAUGHTON, DONALD WOODS, and MARK
PETTYJOHN,

        Defendants,

and

MICHAEL BURKHART,

        Third-Party Defendant.

UNPUBLISHED
October 27, 2022

No. 358175
Oakland Circuit Court
LC No. 2019-176061-CZ

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

        Plaintiff, Randy Atto, appeals as of right the trial court's order granting summary disposition in favor of defendant/third-party plaintiff, Stephen Wandrie, under MCR 2.116(C)(10)

(no material questions of fact). We reverse and remand to the trial court for further proceedings. We do not retain jurisdiction.

## I. BACKGROUND

This matter arises from Atto's decision to invest in a failed marihuana growing facility, which was operated by third-party defendant, Michael Burkhart, in Flint, Michigan. In 2011, Atto met Wandrie, and Wandrie became Atto's financial advisor. In 2016, Atto asked Wandrie to "review [his] 401K plan and make some suggestions." Wandrie agreed. During the meeting, Wandrie, who is childhood friends with Burkhart, told Atto about the Flint facility. After viewing the Flint facility and meeting Burkhart, Atto invested $120,000 in cash. According to Atto, Wandrie guaranteed Atto would receive a 25% return on the investment within one year. Atto never received a return on the investment.

In 2019, Atto filed suit against Wandrie and several others.[1] The complaint contained claims of: (1) breach of contract, (2) "quantum merit and unjust enrichment," (3) promissory estoppel, (4) fraud and intentional misrepresentation, (5) fraudulent concealment, (6) innocent misrepresentation, (7) negligent misrepresentation, (8) conversion, (9) civil conspiracy, and (10) violations of the Uniform Securities Act (2002), MCL 451.2101 *et seq*. Atto also alleged claims of breach of fiduciary duty and requested an accounting. Wandrie generally denied liability and filed a third-party complaint against Burkhart.[2] Discovery commenced.

In December 2020, Wandrie moved the trial court for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10). In relevant part, Wandrie argued Atto's breach-of-contract claim failed because "the primary purpose of the alleged contract violate[d] Michigan Law and public policy" and was therefore unenforceable. Wandrie also argued Atto's claims were barred because he did not have "clean hands," and summary disposition on Atto's breach of fiduciary duty claim was proper because Wandrie was not acting as Atto's fiduciary when the alleged agreement was formed. Atto opposed the motion, arguing the wrongful-conduct rule and the doctrine of unclean hands did not apply because the Flint facility was operated in accordance with the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., which was in effect at all relevant times. Atto also argued, among other things, that a question of fact existed as to whether Wandrie breached a fiduciary duty.

In May 2021, the trial court held oral argument on the motion for summary disposition and took the matter under advisement. In July 2021, the trial court issued a written opinion and order, granting Wandrie's motion for summary disposition. The trial court concluded Atto's claims were barred by the wrongful-conduct rule because Atto's claims were based on conduct that was

---

[1] Atto filed suit against Wandrie, as well as several individual and corporate defendants Wandrie had associations with during his career in the investment industry. The trial court granted summary disposition as to these defendants during the proceedings. Atto does not dispute this ruling on appeal.

[2] Burkhart did not answer the third-party complaint, and a default was entered.

prohibited under MCL 333.7401(1) of the Public Health Code, MCL 333.1101 *et seq.*, at all relevant times.[3] This appeal followed.

## II.  STANDARDS OF REVIEW

This Court reviews de novo a trial court's interpretation and application of a statute. *Detroit Pub Sch v Conn*, 308 Mich App 234, 246; 863 NW2d 373 (2014).  We also review de novo a trial court's decision to apply equitable doctrines.  *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).  Finally, a trial court's decision regarding a motion for summary disposition is also reviewed de novo.  *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

In this case, the trial court indicated it was granting summary disposition under MCR 2.116(C)(8) and (C)(10).  However, the parties relied on documentary evidence, and the trial court relied on documentary evidence to support its decision.  Accordingly, MCR 2.116(C)(10) is the appropriate basis for review.  See *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010); *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim.  When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion.  A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact.  A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.  [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)."  *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## III.  ANALYSIS

## A.  WRONGFUL-CONDUCT RULE

Atto argues the trial court erred by granting summary disposition based on its application of the wrongful-conduct rule.  We agree.

---

[3] "[I]n 2018, [Michigan] voters approved the Michigan Regulation and Taxation of Marihuana Act . . ., MCL 333.27951 *et seq.*," which "generally decriminalized recreational possession and use of marihuana for people 21 years old or older and provided for the legal production and sale of marihuana."  *Cary Investments, LLC v City of Mount Pleasant*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 356707 and 357862); slip op at 5 n 1.

"Michigan courts have long recognized the existence of the wrongful-conduct rule," which is a common-law maxim. *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, 337 Mich App 529, 552; 976 NW2d 674 (2021) (quotation marks and citations omitted), oral argument ordered on the application. "The wrongful-conduct rule provides that when a plaintiff's action is based, in whole or in part, on his own illegal conduct, his claim is generally barred." *Id*. However, "[t]he mere fact that a plaintiff engaged in illegal conduct at the time of his injury does not mean that his claim is automatically barred under the wrongful-conduct rule. To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." *Orzel by Orzel v Scott Drug Co*, 449 Mich 550, 561; 537 NW2d 208 (1995).

The trial court concluded MCL 333.7401(1) was violated because "[t]he contract at issue in this case was to do precisely what was, at the time of the transaction, illegal under this provision of the Public Health Code. . . ." While the trial court did not specify whose conduct violated MCL 333.7401(1), the relevant question is whether Atto's conduct violated MCL 333.7401(1) because he is the plaintiff in this case. See *Orzel*, 449 Mich at 561 ("To implicate the wrongful-conduct rule, *the plaintiff's conduct* must be prohibited or almost entirely prohibited under a penal or criminal statute.") (emphasis added).

MCL 333.7401(1) states, in relevant part: "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form." Marihuana is classified as a controlled substance. MCL 333.7212(1)(c) and (2). At all relevant times, marihuana was defined in the Public Health Code as

> all parts of the plant Cannabis sativa L., growing or not; the seeds of that plant; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. Marihuana does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from those stalks, fiber, oil, or cake, or any sterilized seed of the plant that is incapable of germination. [MCL 333.7106(4).] [4]

With respect to whether Atto possessed marihuana "with intent to manufacture, create, or deliver" it, Michigan courts recognize possession can be actual or constructive and may be proven by circumstantial evidence. *People v Hill*, 433 Mich 464, 469-470; 446 NW2d 140 (1989). To find constructive possession, there must be proximity to the contraband with an "indicia of control." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000). Therefore, it is enough the contraband's location is known to the person and the contraband is reasonably accessible to him. *Id*. However, a person's mere presence in proximity to contraband is insufficient, by itself, to establish possession. *People v Vaughn*, 200 Mich App 32, 36; 504 NW2d

---

[4] MCL 333.7106(4) was amended by 2021 PA 60.

2 (1993). "There must be some link shown between the person charged with the possession offense and the contraband discovered." *Id*.

In 2016, Atto went to the Flint facility. Although Atto saw marihuana plants in the facility, there is no indication Atto had any control over the marihuana. Rather, at that point, Atto was considering investing in the Flint facility, and he testified he did not "sample" the marihuana. Atto later invested in the Flint facility, but there is no indication he was given a key or unfettered access to the facility or any marihuana produced there. Indeed, Burkhart testified Atto did not "step[ ] in the facility after that day that [he] first met" Atto, and Burkhart testified he had sole control over the Flint facility. Because there is no evidence Atto possessed the marihuana, he could not have possessed it "with intent to manufacture, create or deliver" it. Atto also could not have delivered the marihuana. See MCL 333.7105(1) (" 'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship."); *People v Schultz*, 246 Mich App 695, 703; 635 NW2d 491 (2001) (the word " 'transfer,' both as a noun and a verb, seem to broadly contemplate any conveyance of something from one person to another").

There is also no evidence Atto "created" marihuana in the Flint facility. The Public Health Code does not define "create." Therefore, it is proper to consult dictionary definitions. *Messenger v Consumer & Indus Services*, 238 Mich App 524, 534; 606 NW2d 38 (1999). *Merriam-Webster's Collegiate Dictionary* (11th ed), defines "create" as "to bring into existence[.]" As already stated, the evidence in this case supports Atto went to the Flint facility on one occasion. There is no indication Atto touched marihuana at that location, let alone brought it "into existence[.]" Rather, Atto provided money so Burkhart would "bring" marihuana "into existence[.]" For these same reasons, there is no evidence Atto manufactured marihuana. *People v Korkigian*, 334 Mich App 481, 490; 965 NW2d 222 (2020) ("The term 'manufacture' encompasses six forbidden activities: production, preparation, propagation, compounding, conversion, and processing."). In sum, there is no evidence Atto directly violated MCL 333.7401(1).

While the trial court focused on Burkhart's conduct at times, there is no indication the trial court concluded summary disposition was proper because Atto aided and abetted Burkhart in violating MCL 333.7401(1) by providing financial support. *People v Izarraras-Placante*, 246 Mich App 490, 495; 633 NW2d 18 (2001) ("A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense.") (Citation omitted.) Summary disposition based on this theory would have been improper because, to support a finding a defendant aided or abetted a crime, a defendant must have "intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." See *Id*. at 495-496. Atto testified he believed the Flint facility was being legally operated based on representations made by Wandrie, thereby creating a question of fact concerning Atto's intent and barring summary disposition.[5] See *Pioneer State Mut Ins Co*, 301 Mich App at 377.

---

[5] While "mistakes of law cannot usually be a ground of relief," "when a mistake of law is predicated on an affirmative misrepresentation by one who acts in a fiduciary capacity, the law is

Additionally, as noted by Atto, the trial court failed to adequately consider whether the MMMA applied. The MMMA provides exceptions to the Public Health Code's prohibition on the use and delivery of controlled substances by permitting the medical use of marihuana when carried out in accordance with the MMMA's provisions. *People v Bylsma*, 493 Mich 17, 27; 825 NW2d 543 (2012). "The primary mechanism by which the MMMA permits marijuana use is through its immunity provision," which is found in MCL 333.26424 (hereinafter § 4).[6] *Varela v Spanski*, 329 Mich App 58, 71; 941 NW2d 60 (2019). "Section 4 grants broad immunity from criminal prosecution and civil penalties to 'qualifying patients' and 'primary caregivers' if certain conditions are met." *Id.* at 71-72. "Sections 4(a) and 4(b) of the MMMA contain parallel immunity provisions that apply to qualifying patients and registered caregivers, respectively." *Id.* at 76.

In this case, the trial court improperly focused on whether Atto's conduct complied with the MMMA when deciding the motion for summary disposition. The relevant question was whether Burkhart complied with the MMMA because the undisputed evidence establishes he owned/handled the operations at the Flint facility. Nonetheless, the trial court did not address Burkhart's conduct. While Atto argues Burkhart would have been entitled to § 4 immunity because he testified he was a licensed caregiver to five patients, we decline to address this issue for the first time on appeal. Caselaw makes it clear entitlement to § 4 immunity is a question of law to be decided by the trial court before trial, see *Varela*, 329 Mich App at 74 (quotation marks and citation omitted), and evidentiary hearings concerning § 4 immunity are sometimes necessary, see e.g., *People v Hartwick*, 498 Mich 192, 244-245; 870 NW2d 37 (2015) (remanding the matters to the trial court for evidentiary hearings). Indeed, "the trial court must resolve factual disputes relating to § 4 immunity, and such factual findings are reviewed on appeal for clear error[.]" *Id.* at 201. The trial court is the appropriate forum for Atto to raise his arguments concerning the application of § 4. See *Apex Laboratories Int'l, Inc v Detroit (On Remand)*, 331 Mich App 1, 10; 951 NW2d 45 (2020) (noting this Court is an error correcting Court, and is generally not the appropriate forum for arguments to be initially decided). We note Wandrie argues summary disposition would have been proper on alternate grounds because the subject-matter of the contract was illegal and because Atto had unclean hands given the illegal nature of the contract. Because it is unclear if the MMMA applied, we cannot to address these arguments.[7]

---

more forgiving." *Rose v Nat'l Auction Group, Inc*, 466 Mich 453, 465; 646 NW2d 455 (2002) (quotation marks and citations omitted). As will be discussed later in this opinion, there is a question of fact as to whether Wandrie acted in a fiduciary capacity.

[6] MCL 333.26428 "of the MMMA provides a limited protection for the use of medical marihuana in criminal prosecutions, which requires dismissal of the charges if all the elements of the defense are established." *People v Kolanek*, 491 Mich 382, 415; 817 NW2d 528 (2012). However, MCL 333.26428 is not relevant to this appeal because it "is only applicable to criminal prosecutions." See *Varela*, 329 Mich App at 73.

[7] To the extent Wandrie argues summary disposition on the breach-of-contract claim was proper because the undisputed evidence establishes he provided the $120,000 to Burkhart, this argument is without merit. While Wandrie testified he gave the $120,000 to Burkhart in three $40,000 increments, Burkhart denied ever receiving $40,000 all at once. Rather, Burkhart testified Wandrie

## B. BREACH OF FIDUCIARY DUTY

Atto next argues a question of fact exists as to whether Wandrie breached a fiduciary duty. We agree. "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020).

> This Court has explained that a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another. Relief is granted when such position of influence has been acquired and abused, or when confidence has been reposed and betrayed. A person in a fiduciary relation to another is under a duty to act for the benefit of the other with regard to matters within the scope of the relation. [*Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 580-581; 603 NW2d 816 (1999) (citation omitted).]

As to whether a fiduciary relationship existed between Atto and Wandrie, we note that Atto, who has multiple advanced degrees and a history in investment, testified Wandrie guaranteed him a 25% return on the $120,000 investment within six months to one year. Atto testified he did not believe there was a risk of loss despite acknowledging investments can be "lost." Atto acknowledged multiple times he was aware the investment "was going towards a marijuana facility," and the cultivation and sale of marihuana was illegal in Michigan at that time unless the confines of the MMMA were met. The meeting where Atto was presented with the business opportunity took place at a restaurant, as opposed to Wandrie's office. Wandrie did not present Atto with any documentation concerning the Flint facility.

Atto eventually agreed to invest $120,000, in cash to purportedly avoid any impact on Atto's pharmacy employment, in the Flint facility. Atto testified Wandrie instructed him to withdraw funds in less than $10,000 increments to avoid being reported to the Internal Revenue Service, and Atto complied. Atto paid Wandrie in three installments, and on each occasion he placed $40,000 in cash in bags. Atto acknowledged the arrangement was "secretive." Indeed, the money exchanges took place either outside of Atto's home or in the parking lot of a restaurant. Atto did not initially tell his friends, family, attorney, or accountant about the investment, and Atto acknowledged he was concerned about his professional license. Tellingly, Atto acknowledged he was aware the business deal could impact Wandrie's security license, and Atto never obtained a written agreement or receipts. According to Wandrie, it was "absolutely 100 percent common knowledge" the Flint "facility was outside of [his] scope as an investment advisor." However, while Wandrie argues the evidence supports Atto was aware the investment was illegal, Atto denied this under oath. Courts are not permitted to judge credibility when deciding a motion for summary disposition. See *Pioneer State Mut Ins Co*, 301 Mich App at 377. A question of fact therefore exists with respect to Atto's claim for breach of fiduciary duty.

---

gave him smaller amounts of money in increments. And, Burkhart did not believe he received a total of $120,000 from Wandrie. Thus, a question of fact exists.

In so indicating, we acknowledge Wandrie argues "[t]his Court cannot analyze any contemporaneous discussions that supposedly took place. . . ." However, Wandrie does not cite binding authority or provide meaningful analysis to support this argument. Consequently, the argument is abandoned and will not be considered. See *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003).

## IV. CONCLUSION

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood